Case number 161319 Francisco Jose Masso-Torrellas et al. v. Municipality of Toa Alta et al. Good morning, and may it please the court. Appearing on behalf of the appellants, Roberto Busuavoy, who is counsel for all the appellants. We have been granted 15 minutes by the court. And I would very respectfully request that I be given 10 minutes to make an exposition and have 5 minutes for reply. You want to reserve 5 minutes? That's right. Okay. This case really is a section 1983 civil rights case that was brought by plaintiffs. Do you understand the complaint to be asserting a takings claim? Pardon me, Your Honor? Do you understand the complaint to be asserting a takings claim? No, it's not a taking, Your Honor. So what is the constitutional violation? The constitutional violation here is that the plaintiffs were denied the use of their property, which may be part of a taking, yes, but without due process of law. They were denied access to their property. They were subjected to the use of armed force by the municipality, using their armed guards to impede their movement within their property. And finally, the municipality filed against the construction bond a malicious and spurious request, which has damaged not only their professional reputation, but has put them in a position that they cannot obtain a bond of any real size anymore. And being in the construction business, that means that they can't really work anymore because what they can get are very small bonds that do not qualify for the big contracts, especially the government contracts. Now, all this was done because the two contracts that were involved in this particular project were originally granted to them by the previous municipal administration. Well, why isn't this really just a breach of contract? No, this is not a breach of contract case. The breach of contract is just a pendant jurisdiction. And that would be a supplemental state law claim because both of the mass over-orders, personally speaking, were not signatories to the construction contract. That's actually one of the main problems facing this court when you have to look at the memorandum and the order that we're appealing from because they're being actually forced to go through what could be mediation or maybe even arbitration according to the district court when they haven't been signatories to any contract. And certainly they haven't agreed to it. But what property of those two plaintiffs does the complaint allege was wrongfully withheld them in violation of the 4th, 5th, or 14th Amendment? Well, they are the sole owners of the corporation. So the corporation was withheld from them? I want to know what property the complaint identifies that they were the owners of. In particular, we have a complaint, which is, of course, I understand complies with both Tomley and Igbo, so it's possible. But the details have not been written out in the original complaint because it's not necessary to do so. But the main problem here facing the court is that ‑‑ So the allegation is simply that their property was withheld from them in violation of those three constitutional provisions? In part. And in part it was withheld. And actually the municipality said or told them that they would decide which property belonged to the Basso brothers and which property belonged to the municipality. And that they, without going to court or doing any other ‑‑ Did the corporation own any property? The corporation owned property. Probably all of it? No, not all of it. As a matter of fact ‑‑ So which property did the two individual plaintiffs, the brothers, what property is it that they're identifying was withheld from them? At this time I couldn't itemize them. Can you give me an example? Yeah. They, for example, they are signatories to the bond, to the construction bond. And they need to raise money in order to, you know, go on having their businesses. Now, they can't do that because the corporation doesn't have any real amount of money to back up a future bond. Now they're owed more than $2 million by the municipality. And the Basso brothers had to put some money of their own into the corporation just to keep it going in order to try to collect from the municipality. Not in this case, directly. And when they went to try to get new bonds for other projects, they were told that they didn't have the capacity anymore. So that actually their capital had dwindled to such an extent that it's practically nonexistent as far as, you know, the business is concerned. To the extent that this is a breach of contract claim, putting aside the question of whether this is a mediation or an arbitration clause, there's a forum selection clause which puts this in the Puerto Rican courts, right? Yes, but then again, this is a supplemental state law claim. The federal district court works as a Puerto Rican court. But this forum selection clause, even if it's there on supplemental jurisdiction, would still be enforced, right? And it would have to be brought in state court. We respectfully understand that the federal court would have jurisdiction as a supplemental law claim to hear the case. Why wouldn't the forum selection clause be enforced? Well, because in real terms, once you have pendant jurisdiction, the federal court takes over and they will have to apply Puerto Rican law. But doesn't the forum selection clause specifically mention the Bayamón Superior Court? Yes, but it doesn't mention that the municipality is going to, you know, take away constitutional rights. Because, I mean, what we would be doing is we might be dividing up two cases. And the idea of supplemental law claims is precisely to make sure that the cases are heard in an expeditious manner. Otherwise, we would have two cases and we would still have our federal claim, our 1983 claim, and then we would have to be litigating in Bayamón also. That may be what the court thinks. I don't think anything. I just asked you a question. No, I very respectfully understand that the idea of having supplemental state law claims heard by the federal court is precisely to try to expedite the cases and make it easier for people to get a final solution of everything. But the main gist of this here, Your Honor, is that we had two requests by the defendants. One under 12B1 and one under 12B6. And whenever you have that, this particular court has said that you should decide the jurisdictional aspect first. 12B1, as a matter of fact, we have a recent case that came out after our last reply brief was filed, which is the Cortez v. Sonegate, which was decided on September 9, 2016, in which the court states, we do, however, wish to repeat our previously articulated caution that a court compelling arbitration should decide only such issues as are essential to deciding the nature of the forum in which a dispute will be decided. And... So have you brought that, we're familiar with the case, but have you brought it to our attention officially, formally? No, Your Honor. So could you just, you know what a 28J letter is? Under Rule 28J, just send us the citation. I certainly will. I got it a few days ago because it came out after my last brief. You've reserved some time. Yes, that's right. Before you sit down, I want to ask you something that I will also ask the other side. The translation in this case seems to have a problem in my view. I want to know what your view is. On the contract? Yeah, well, phase one says the mediation is final. Yes, it's wrong. And the translation in the second part doesn't say that, it says that, and the contract doesn't say that at all. That's right, Your Honor. There's an error in that translation. We were the ones who brought it in. And when we finally got it, the court, the district court knows the difference because they mentioned it in footnote four. And the second contract does not have the finality language that the first one does. Actually, there's no doubt that the second one is just mediation because it's not classic arbitration by any means. I beg to differ with you. There is a doubt. Sure. Thank you. May it please the court, attorney Eduardo Vera for the municipality and the official capacity defendants. The crux of the matter here or the most important part of this case is not really in whether this is a mediation or arbitration clause or if it's binding or if it's final in terms of the procedure it provides or not. That is because there are alternate grounds that obviously should compel the same decision that they just arrived to. And the motion was brought, the 12B6, and it was fully briefed by the parties on all aspects. And you have three different matters here that are very important in the analysis that the court should make because I think and I very respectfully propose and municipality proposes that this is not the best case for the court to go into FITTECH against Valley and try to create specific square findings about the mediation clause and the arbitration clause. Under the contract, that's a matter for the Puerto Rican courts to decide, right, as to whether this is an arbitration clause or a mediation clause. That's exactly right, Your Honor. There are two clauses in the contract that definitely take this out of the federal court's purview. The first clause is a clause that says that there's a mandatory mediation that has to be exhausted before a case is taken to court, to any court. That doesn't matter which court. And looking in good faith to the translation, I do understand Your Honor's concern because I do think there's a problem in the translation. And I don't know exactly how we could solve this. I could submit a new translation. It was done by a certified translator. But I do have the language in Spanish. And the language in Spanish is not exactly what was translated. But it does require what it requires. But the translator added an additional sentence to the face of the contract. Yes, that is absolutely right. That is absolutely right. But that really isn't material. It is material. The case has to go to the Vallejo court. Yes, but you ask whether it was a faithful translation. It is not. And I'm saying this in good faith. Because that's a sentence that is not in the original. Was the forum selection provision litigated, raised as an issue in the district court? Yes, it was raised. And in the memorandum filed by the plaintiff, he just argues against that, saying that it was raised in a footnote, which is true. It's footnote 8 of the motion for summary judgment. And it squarely says to the court, as an additional ground, you have this other problem. But it's stated there. And this particular argument doesn't require any development at all. There is the clause that says that if a party wants to file a claim, it has to do so in the Bayamón Superior Court. You don't have really any big argument about that. The contract says what it says, and it's not been complied with before taking in this case. And the mandatory mediation clause also says that they have to exhaust the mediation process before resorting to court. You have two direct clauses that stem from the contract that take this case out of the court's purview and that does not have to, do not require the court to go into whether there is an issue under the Fair Arbitration Act. I should know the answer to this, but I don't, so maybe you can help me. What about the, what if there is a plausible 1983 cause of action? Is that ruled also by the forum selection clause? No, Your Honor, it is not. And we, and both appellees, have made that immediately in their briefing. So it's... All right, then, assuming that there is a plausible form of 1983, you'd have this case divided in two. Yes. Unless the court assumes... Yes, because the 1983 that will remain would be from the individuals in the personal capacities. You would be resorting to state court, to the Bayamón court, first to mediation, and then to the Bayamón court to deal with the breach of contract allegation by OSAM. And then the two partners, or two executives of OSAM that are suing in their personal capacities with their spouses would be able to entertain any claim that they might have, any cognizant claim, regarding a violation of 1983 in the federal court. So you would have two separate cases. Yes, that's correct. But the truth is that there's, if you do a fair reading of the complaint, there is a big problem in terms of the allegation made of constitutional violations. The facts are really not there. It's just a set of conclusory allegations. And if you go amendment by amendment, as is done in both briefs by the appeals, you would see that there are no facts supporting any constitutional claim at all. And in terms of the seizure of property, the property that was in the project should have belonged to the construction company, not to the individual owners. So there's no allegation in the complaint that the individual owner's property was taken in any form. I guess that if there hadn't been a contract here between the municipality and the plaintiffs, there might be plausible constitutional claims here. But it's the fact that there's a contract that suggests that it's really a contract case rather than a constitutional case. Yes, and besides, if you take the time to read the clause in the contract, there is a clause that prevents this type of situation. It says that in the event of a takeover by the municipality, they have a time that is given in the contract, that is 30 days, to make a catalog of the property that is there and return any property that doesn't belong to the municipality. If one of the individual plaintiffs had his personal automobile seized at the job site and held on to it for two weeks, could he not bring a Fourth Amendment challenge to that? No, in my opinion. Because he has to go through the contract? In my opinion, no, because there's a flaw in that presumption because the car should have not been there in the first place. Now, I'm just talking about whether there would be jurisdiction outside of the four corners of the contract to hear the case. Well, they would have to prove, for such a case, they would have to establish that the municipality knowingly took that car that belonged to them and retained it after knowing... So they allege all that in the complaint. If they alleged all that in the complaint. If they allege all that in the complaint, perhaps they could have a cease and desist, but they do not in this case. And that there's no relation whatsoever of personal property in the complaint. And besides, you have the fact that the municipality has a time to make a catalog of the property that is there and the complaint says that... Did you raise an Iqbal challenge, a motion to dismiss... Yes, I did. ...on the point of who owned what property? Yes, we said... Well, we said that allegations are not sufficient because they... from the individual plaintiffs, because what they say in terms of the seizure and the complaint is that the property that was there, the tools that were being used and the damios that were used... Sorry, I don't remember the translation right now. But the construction equipment that is used belonged to Osam, which might be true, but that doesn't create a seizure property for the individual. That's what's alleged in the complaint. That's alleged in the complaint. But they don't say that any of their personal belongings were taken. And when you go, for example, in the Fourth Amendment, you go to what the police did here, the municipal police's textbook of what should have done in such circumstances. No claim of abuse, no detention whatsoever of anyone. And you take this in the context of the breach of contract. At the end, you will see that what the municipality did, they ended the contract and they created this mechanism to go there and take over the project with minimal or no use of force without arresting anyone, and that's what happened. And at the end, the case is a breach of contract case that has to go through mediation first, then to the Superior Court of Guayamon, and the individual plaintiffs have not voiced their cognizant of course of action under 983. Thank you. Okay, thank you. May it please the Court, Margarita Mercado on behalf of the Mayor of Tualta in his personal capacity. I would like to emphasize that if this Court reads the complaint, the allegations regarding what happened on the day that the project was closed and the municipality intervened are all intertwined with the contract and are all linked to the company. In that regard, we would submit that those allegations should go to the Puerto Rico Superior Court because there are no plausible allegations that the individual plaintiffs, the two owners of the company who filed the complaint in their capacity as owners or presidents of the company, they don't have a freestanding plausible claim for violations of their constitutional rights. If all we had here was a seizure of the corporation's property and there had been no contract, there would be a plausible constitutional claim, wouldn't there? Without a contract, then it could be, based on what was the municipality's authority to intervene with a property, there would be a citizen suffering an intervention from the government. But that is not the case. That could be a plausible claim, but that's not the case here. I would like to draw this Court's attention to paragraph 420 and 419 and 421 of the complaint, where in fact they even claim that most of the property belonged to a subcontractor, not even to a plaintiff, the company. It belonged to a third party. Security don't have standing to invoke the rights of that third party here that has not sued. And they only claim to be true to the complaint. The only allegation is that they had security barriers and fences that belonged to the company that were not returned. There is not a single allegation that plaintiffs in their individual capacities suffered a seizure of their property. Also, the facts show that this happened within a timeframe of two weeks, and they concede in the complaint that by February the 18th, the municipal police had withdrawn from the project and that they received most of their properties. There is simply no allegation to even establish that there was a long forfeiture or a period of time where the company itself suffered a seizure. But again, that would be covered from the company's side by Articles 21 and 24 of the contract, which stated that the municipality can terminate the contract and it could give notice to the company as it happened of how the transition period after termination would ensue. In the termination letter, OSAM was advised that on February the 4th, the transition would begin, that the municipality would come in and deal with the property. It was objectively reasonable for the municipality to make sure that municipal property would not be taken by the plaintiffs. The site belonged to the municipality, so the municipality was well within its rights to restrict access to the property. And in an orderly process, maybe it wasn't the happiest of situations. I can concede that. But that doesn't cross the threshold into a constitutional violation. As broader counsel stated, there was no force used. Plaintiffs counsel today talked about force. This honorable court will not find a single allegation in the complaint stating that force was used. The police were there in the site, but no force was used. No arrests took place. Therefore, there is no plausible constitutional violation, and that is why defendants filed a 12-6 motion to dismiss. And although the district court did not address these arguments on the merits, to the extent that this court is construing whether it could exercise your One of the oddities of this contract, it doesn't really say anything about site access, right? No, I was reviewing, and it doesn't establish conditions. But the termination clause does provide for a transition of property and of the project. So I would concede that that's the specific clause that would say that. If the contract goes more into specifics of how the company was going to pursue the project itself, but not separation of property, but the site belonged to the municipality. Therefore, although OSAM had property there, it was reasonable for the municipality to proceed as it did. It certainly is not a 14th substantive due process claim. There is no claim allegation of a behavior that could shock the conscience. And regarding the Fourth Amendment claim, there wasn't an arrest, and it was subjectively reasonable for the police to act as they did. And I would like to point out that in their brief, there were no contracts here that would be a plausible constitutional claim for retaining the property. If they could establish which of the plaintiffs' properties were seized. We assume that it's owned by the corporation. But if there were no contract and their property were retained by the municipality, they wouldn't let them retrieve it. That might create a constitutional claim. We would be arguing on the merits whether it was reasonable for the municipality to intervene with property without a contractual right to do so. But here we had a contractual right to intervene. And I would just like to end by emphasizing that under brief, plaintiffs seem to pursue a First Amendment claim that has no basis in the complaint. The only mention of the First Amendment is on the nature of the cause in the complaint. But on the substantive causes of actions, there's no mention of the First Amendment, and there's certainly no allegation of political discrimination against the plaintiffs or that their speech was somehow inhibited or violated. And this record did, in 404, state that there is no plausible First Amendment claim. So that is in a consideration to take that into consideration in evaluating the dismissal. Thank you. Thank you. Once again, I hear the defendants state that they had a right to go in, close the place up, and then make a review of whatever property was inside the project. The contract, they keep saying, gives them that right, but it does not. Paragraph 24th of the contract says, the parties hereto may terminate the contract at any time whenever they deem it necessary and convenient. Through prior written notification served on the opposing party at least 30 days before the effective date of cancellation of the contract. They sent a letter, actually a post-date, because they sent it on the 4th, post-date on the 5th of February. And then they sent the police in, and they took over, and they brought in a car. So if they improperly detained the corporation's property, you'd have a contract claim against them, wouldn't you? If the municipality improperly retained or took the property of the corporation, the corporation would have a claim under this contract. That is right, Your Honor, but what the municipality is going to do is use their force on their color or state law to enforce whatever it is they want against the corporation and the other persons. And the attorney for the mayor stated that there is no plausible First Amendment claim if you look at our opposition to the motion to dismiss. You will see the long, drawn-out story of the political problems that are involved in this particular case, which was actually because the contracts were written by a previous administration. The prior mayor was from the New Progressive Party. Then in the last election, they changed. Did you seek to amend the complaint to include First Amendment? We haven't done that because we never got there, Your Honor. So you have not? No. We've mentioned it to the court, and we haven't had time to work this out because we need to conduct some discovery also. And we haven't had time for that because the district court decided under 12B1 that it didn't have any jurisdiction. We understand that not to be the case. That's why we're here. But this petition to have a de novo review of a 12B6 decision that didn't take place is new to me. I've been around for some time in the profession, and I had never heard of somebody asking for a de novo review of an order that was never given, that was never written, a memorandum that was not decided by the district court. The district court, correctly, through the way it should have been done, decided on the 12B1 first and completely disregarded the 12B6 motion. Now, how can you have a de novo review of something that did not happen? How can we oppose it? It's, I mean, there's always a first. And I don't have a monopoly of everything, but I had never heard of that before. I looked up the cases to see whether there were any cases, and I couldn't find any. I'm not, if there are, I would love to be enlightened. But I had never heard of a petition to have a de novo review of something that does not exist. And that's exactly what I'm trying to do. And if there should be any problems with the way that the complaint is worded, it could still be amended if it's going on and that's the way it should be gone. This is a Section 1983 case. It's not a contract case. The contract aspect comes in only because we're asking for, you know, the court to take care of the supplemental state law claims. We don't want to have two cases in our hands. But if we had, maybe that's what we had. But we still have our constitutional claims that we would like to pursue, and which at this point have not been taken care of by the 12B6 decision. Thank you.